PEOPLE, PLAINTIFF AND APPELLEE, v. PEÑA ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in a Prosecution for Violation of Section 407 of the Penal Code.

No. 1750.—Decided June 16, 1922.

ARSON—CONSTRUCTION OF LAW.—The words ''tobacco sheds'' used in section 407 of the Penal Code are construed to mean sheds intended for tobacco, whether or not they actually contain tobacco at the time of the fire.

ID.—EVIDENCE—INTENT—PREJUDICIAL ERROR.—In this case of setting fire to a tobacco shed the trial court admitted evidence of other fires merely to show 'that other neighboring sheds were burnt on the same night, but it did not show that the defendants set the other fires. *Held:* That the purpose of the evidence not being to show that the fire with which the defendants were charged was not casual, but a part of a series of acts suggesting a common purpose or plan, it was not admissible, and, as alleged by the defendants, was an error prejudicial to them.

ID.—ID.—Proof of animosity between the injured person and the defendants is admissible, whether arising from political causes or otherwise.

The facts are stated in the opinion.
*Messrs. L. Feliú and C. Travecier* for the appellants.
*Mr. José E. Figueras, Fiscal,* for the appellee.
MR. JUSTICE WOLF delivered the opinion of the court.

This was a prosecution by virtue of section 407 of the Penal Code, which provides as follows:

"Sec. 407.—Every person who wilfully and maliciously burns any bridge exceeding in value fifty dollars, or any building, or vessel, not the subject of arson, or tobacco or tobacco sheds, or any growing or standing crop, grass or tree, or any fence, not the property of such person, is punishable by imprisonment in the penitentiary for not less than one nor more than ten years."

The defendants were charged with having set fire and burned with the intention of destroying them two sheds of tobacco belonging to the prosecuting witness.

The first ground of error was that the words of the Code meant a shed which contained the tobacco and not one for tobacco, but we think the words both in Spanish and English are susceptible of being used as sheds intended for tobacco, whether tobacco is actually in them or not.

The second assignment of error is the most important one in this appeal and involves the question of whether a witness should have been allowed to state the existence of other fires on the same night that the tobacco sheds in question were burnt.

In Wigmore on Evidence, par. 300 et seq., is discussed the subject of other offences or similar acts as evidence of knowledge, design or intent. When a defendant's connection with the doing of the act in question is definitely proved, evidence of other acts to show his intent may be admitted. Likewise, if the authorship is unknown, but there is a series of acts or crimes all showing a common design or plan, then also evidence of these other acts may be given. In par. 304, Wigmore on Evidence, after citing cases, the following is set out:

"It will be seen that the difference between requiring *similarity*, for acts negativing innocent intent, and requiring *common features indicating common design*, for acts showing design, is a difference of degree rather than of kind."

What the author shows in other parts of this chapter is
that when the defendant has not been connected with the
crime, all other acts may be given as a part of the theory of
conviction by circumstantial evidence and, of course, where a
defendant is to be connected with the crime, the proof should
be strong as in all cases of circumstantial evidence. How-
ever, when the defendant has already been connected with the
act, the proof of intent need not be quite so strong. Es-
pecially is this so when the government is trying to prove that
the fire was not the result of accident, a subject discussed
in paragraph 303 of Wigmore, *supra.* Says Wigmore: "It
is possible to negative accident or inadvertence and to infer
deliberate human intent without forming any conclusion as
to the personality of the doer." In other words, the multi-
plication of accidents which a single individual suffers would
negative the idea of accident. A citation from *State* v.
*Huffman,* 73 S. E., 294, may clarify this matter a little.

"Generally where evidence of previous offenses has been admitted
for any of the purposes indicated they have been in some way traced
to the defendant, but as we understand the authorities, this is not
a prerequisite to its admission, if it is intended to be limited to
proving that the particular fire in question was not accidental.
Wigmore says: 'Moreover, the principle of anonymous intent is
recognized as being here occasionally of peculiar utility; i.e., the
recurrence of a similar fire may tend decidedly to negative innocent
intent, even though the author of the other fires is not shown; then
the prosecution having negatived innocent intent in the present fire
by whomsoever set, the defendant may be shown to have kindled it.'
Our trouble in the case at bar has been whether the evidence of so
many fires and other depredations running back over so many years
and disconnected in time, circumstances, and character, as these
were, was properly admissible, as falling within the rules and prin-
ciples of the decisions and the text writers cited. We have concluded,
however, that taken in connection with the evidence of the bad feeling
of the prisoner towards Reynolds, beginning about the same time,
the unusual number of these offences, the peculiar character of them,
and the time and circumstances of their occurrences, and taken in

connection with all other evidence in the case, the evidence was admissible, at least on the question of the incendiary character of the fire in question. That Reynolds, a near neighbor of defendant, should have sustained so many and unusual losses of property by fire and otherwise, beginning almost coincidently with the commencement of his troubles with the accused is very significant, and constitute a composite fact bearing not only on the fact of incendiarism, but also, in the absence of any evidence of motive or opportunity on the part of any other person, pointing strongly to the prisoner as the guilty person. For these reasons we are not disposed to sustain this point of error.''

In the case before us, however, there was a naked proof of other fires on the same night and very little more. This ''little more'' was that the defendants and the prosecuting witness belonged to opposite parties and that the defendants acted in propaganda for their party and that all these fires occurred just before the election of 1920. If the government had followed this up by showing that the other sheds burnt also belonged to owners of the same party as the prosecuting witness and that there was much bitter feeling between the two parties, we should have been better satisfied that the proof was admissible, but as the testimony was given error was committed.

The question then arises: Was the error prejudicial? The prosecuting witness and several members of his family testified to having actually seen the defendants, or some of them, setting fire to the sheds, the other defendants being present on the scene. Another witness was called who testified that on the night of the fire he had seen the defendants in a certain neighborhood. On page 27 of the record it appeared that after stating this fact the defence asked no question, but the court put various questions to the witness, to which the witness replied that he had seen defendants on one of the nights of the month of June wherein various fires had occurred in the ward of Lirios and Ceiba

Sur of Juncos. After the court was through interrogating the witness the *fiscal* asked: "This place where you saw the defendants is very far from the place where the fire occurred?" The witness said: "I ought to make an explanation. That night there were various fires in different sheds and some of them were further than others." The defence said: "I object to the witness's talking of other sheds, because there might have been a thousand fires in Juncos and this would have nothing to do with the defendants." The *fiscal* maintained that the fact of burning properties in the neighborhood tended to prove that the act committed by the defendants was malicious and intentional. The court, after a little argument, admitted the question merely to show that other sheds were burnt, but without showing that the defendants had any connection with the other fires, and then the witness was allowed to say, apparently without further objection, that the sheds that were burned that night were on properties belonging to Juan Dávila and Juan Rivera of Juncos.

While the writer of this opinion and Mr. Justice Aldrey have doubts, the majority of the Court is convinced that the defendants were prejudiced by the introduction of this evidence, and the minority members are willing to give appellants the benefit of the doubt.

Another ground of error was that the court permitted the proof of the difference of political affiliation between the prosecuting witness and the defendants, but we see neither error nor prejudice in this. In point of fact the court would not permit the witness to say what the differences between the political parties were, or the difference in their tendencies, which was an action favorable, if anything, to the defendants. We see no possible objection to proving animosity between the prosecuting witness and the defendants, whether it springs from a political or any other cause.

The judgment appealed from must be reversed and the case remanded for a new trial.

*Reversed and remanded.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.